**WALES INDUSTRIAL INC., Plaintiff,**

v.

**HASBRO BRADLEY, INC., Defendant.**

**No. 85 Civ. 2049 (EW).**

United States District Court, S.D. New York.

March 30, 1985.

Lilling & Greenspan, White Plains, N.Y., for plaintiff; Burton L. Lilling, Bruce E. Lilling, A. Kate Huffman, White Plains, N.Y., of counsel.

Parker Auspitz Neesemann & Delehanty P.C., New York City, for defendant; Anthony M. Radice, Kim J. Landsman, Martin S. Himeles, Jr., New York City, of counsel.

## MEMORANDUM

EDWARD WEINFELD, District Judge.

Plaintiff moves pursuant to Fed.R.Civ.P. 65 for a preliminary injunction. As our Court of Appeals stated recently, " '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' " *Citibank, N.A. v. Citytrust & Citytrust Bancorp, Inc.*, 756 F.2d 273, 276 (2d Cir.1985) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983) ). Even assuming that plaintiff's allegations of potential injury are true, they do not amount to a demonstration of irreparable harm. Essentially, plaintiff claims that unless the Court makes an early determination of the validity of defendant's claimed copyrights and whether plaintiff's toy products infringe those rights, if any, then shipments of plaintiff's toys may be detained or recalled by the United States Customs Service, with which defendant has already registered its claimed copyrights; that plaintiff's customers may, as one already has, require it to indemnify them against possible legal action by defendant; that because of defendant's published threats of litigation plaintiff is likely to lose prospective sales to as yet unidentified customers; and that plaintiff, a new company, would be severely damaged in its business and reputation if it were compelled to cancel its customers' purchase orders that are now pending, since those customers would then be reluctant to deal with plaintiff in the future. As these claims indicate, plaintiff's greatest risk of loss is that it may not be able to fill its customers' pending purchase orders promptly and without complication. Yet any order cancellations or expenses it may incur in filling these orders that are attributable to defendant's allegedly wrongful efforts to enforce its claimed copyrights would only reduce plaintiff's anticipated profits on these orders. Such loss could easily be calculated and offset by money damages. As to the claim that plaintiff may lose prospective sales and future business opportunities, the value of which cannot now be ascertained, plaintiff offers lit-

tle more to support this claim than its assumption that such would be the case.

More importantly, it is clear that plaintiff embarked upon its present course of business with full knowledge that its sales efforts might be met with claims of copyright infringement. Plaintiff concedes that its toys are based on copies of Japanese goods for which defendant owns the United States copyrights and that plaintiff directed its foreign supplier to modify the copies in order to avoid infringing defendant's rights. Indeed, plaintiff expressly reserved the right to cancel its contract with the foreign supplier if the preliminary injunctive relief plaintiff now seeks could not be obtained before April 1, 1985. Plaintiff was well aware of the legal risk involved in selling its toys but chose to undertake that risk and proceeded to accept purchase orders from the customers whose good will it now fears losing. Its claim now that this very risk threatens to cause it injury of an irreparable nature is considerably less persuasive as a result. Furthermore, while plaintiff learned that its venture would meet with resistance from defendant as early as January 1985, when defendant gave notice to plaintiff's supplier and sales representative that defendant would institute an infringement lawsuit against them unless they discontinued sales of plaintiff's toys and plaintiff executed the contract with its supplier wherein it reserved the right to cancel if it could not obtain preliminary injunctive relief by April 1, 1985, plaintiff waited until the very eve of April 1 before commencing this declaratory judgment action, in effect "jumping the gun" on defendant. "In short, [plaintiff's] failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Citytrust & Citytrust Bancorp,* at 277 (quoting in part *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609 (S.D.N.Y.1979)).

In addition, and entirely apart from the foregoing, it is questionable upon the voluminous and complicated record presented on this application that at this stage of the action plaintiff has established a likelihood of success upon a trial of the merits. Plaintiff's main contention that lack of a copyright notice on the items offered for sale by defendant's supplier in Japan vitiates any copyright by defendant in the United States is drawn into serious question. *See Midway Mfg. Co. v. Artic International, Inc.,* 547 F.Supp. 999, 1008 (N.D. Ill.1982), *aff'd,* 704 F.2d 1009, 1013 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983); 17 U.S.C. §§ 401(a), 405(a)(2). Moreover, assuming defendant is entitled to prevail on the issue of the validity of its claimed copyrights, plaintiff's further claim that its toys do not infringe those rights is at once challenged upon a mere inspection of the parties' products. The fact that plaintiff's supplier continually modifies its molds so as to make its items here in issue more distinguishable from defendant's corresponding items gives further support to defendant's claim of infringement and that plaintiff embarked upon a deliberate policy of copying defendant's copyrighted items. Indeed, "Plaintiff does not deny that Glacier had access to the Takara Items or that Glacier originally copied." Plaintiff's Brief at 12.

Plaintiff has not shown a likelihood of success on the merits. Nor, assuming there are sufficiently serious questions going to the merits to make them a fair ground for litigation, has it shown that the balance of hardships tips decidedly in its favor, given its apparent willingness to undertake the risk of an infringement action by defendant and then to wait some two months before seeking preliminary relief. Accordingly, plaintiff has failed to carry its burden on all branches of the standard for granting a preliminary injunction, *see Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam), and its motion is denied.

So ordered.